## PATTILLO *v.* JONES.

Where an equitable petition was brought by one of two partners against the other, praying for an injunction to restrain the defendant from disposing of the partnership property, and asking that a receiver be appointed to take charge of it, and that a dissolution of the partnership between plaintiff and defendant be decreed; and where, at the trial term of the case, it appeared from plaintiff's pleadings that the partnership had terminated by the terms of the contract, and that the only cause of action left to plaintiff against the defendant was for an alleged breach of the contract, occurring after the original petition was filed, whereby defendant had obligated himself to convey to plaintiff a certain portion of the property on certain conditions, there was no error in refusing an amendment to the petition praying for damages growing out of such breach, and in dismissing the case; the original action being functus officio and the amendment setting up a new cause of action.

Argued February 17,—Decided May 24, 1898.

Equitable petition. Before Judge Candler. Bartow superior court. July term, 1897.

R. M. Pattillo brought suit against T. R. Jones. Defendant moved to dismiss the petition, because it stated no cause of action, and showed upon its face that no cause of action existed when the suit was filed. Plaintiff offered two amendments, the first of which was allowed. The second the court allowed to be filed, but disallowed so much of it as claimed damages from breach of contract, on the ground that it introduced a new cause of action. The court then sustained the motion to dismiss, and plaintiff excepted.

The original petition alleged : Petitioner obtained from Jere E. Field, the owner of certain land upon which petitioner, who is a mining expert, had discovered valuable minerals, an option of purchase for sixty days at $4,000, $1,000 cash, $1,500 in 12 months, and $1,500 in two years, with eight per cent. interest from date; and petitioner and defendant, before the expiration of the option and without the knowledge of Field, signed an agreement in writing, whereby defendant bound himself to pay for said place according to the terms of said option from Field, and to deed to plaintiff a half-interest therein which was to cost plaintiff nothing, the consideration of the agreement being the mutual obligations therein assumed, and the service plaintiff had rendered defendant in discovering the value of the place and in giving him information thereof, and in enabling him to thus become interested in the property, and the consequent damage or loss to plaintiff. On the next day after this agreement was made the defendant wished to modify it, and to substitute in lieu of it another, which was done ; an agreement a copy of which is attached to the petition being substituted. This agreement, although it appears in two parts, was all made and signed at the same time, and written and agreed upon by both parties before either part was signed, upon the distinct understanding that the whole constituted an agreement between them. In addition to the mineral value of the property, it has a distinct agricultural value, the 82 acres referred to in the contract being agricultural land worth $3,500 to $4,000. Petitioner was anxious to secure this agricultural land, and hence he made the agreement embodied in the contract; and it is his intention to comply with the contract ac-

cording to its true interpretation. He contends that under this contract defendant has no right to dispose of said agricultural land except to plaintiff, or plaintiff's heirs or assigns, and at the terms stipulated in the contract, to wit $1,000; but defendant has been and is still attempting to sell said 82 acres without plaintiff's consent and over his protest, and has notified plaintiff that he intends to sell the same to a designated person. He has no right to dispose of any of said place, either agricultural or mineral, without plaintiff's consent. The mineral interest therein has not been developed sufficiently for any one to know its value, and such value is problematical and to a large extent contingent; but plaintiff believes that its value is large, and that it is possibly worth $10,000. Its value not being known, the damages which would result from the sale of the property by defendant against plaintiff's wishes can not be estimated. The property owned by defendant would not, at its present cash value, exceed his liabilities sufficiently to. make good a judgment against him for the damages which plaintiff would sustain in consequence of his selling the property, or any part thereof, to any other person, in violation of plaintiff's rights. Discovery is prayed as to the nature and extent of defendant's property, income, indebtedness, etc., specific interrogatories being propounded. The petition further alleged: The contract in question creates a partnership between plaintiff and defendant as to said place. They disagree as to what shall be done with it. Defendant is trying to dispose of it, and plaintiff is opposed to disposing of it on defendant's terms, and there is no probability of reconciliation in regard to the conduct of the essential business of the partnership, or the disposition or probable handling of the property; and he asks that the defendant produce before the court at the hearing certain books, papers, etc., to be used in evidence for plaintiff. He prays that the defendant be enjoined from selling, encumbering, or otherwise disposing of the property in question, or any interest therein, without plaintiff's consent, that a receiver be appointed to take charge of it, that a dissolution of the partnership between plaintiff and defendant, created by the contract, be decreed, that defendant be enjoined

from creating any obligations for or in behalf of the partnership ; and for general relief.

The papers referred to in the petition are as follows:

"Georgia, Bartow County. This contract witnesseth: 1st. That whereas R. M. Pattillo holds an option or instrument of writing signed by Jere E. Field, dated August 11th, 1894, wherein the said Jere E. Field binds himself to sell to said R. M. Pattillo his plantation on the south side of the Etowah river, containing 137 7/10 acres, and known as the widow Dobbs place, for the sum of four thousand dollars, one thousand dollars to be paid in cash and the balance to be paid in two equal installments of fifteen hundred dollars each, due in twelve and twenty-four months from the date of purchase, with 8 per cent. interest thereon from date, said privilege of purchase extending to October 10, 1894, and whereas T. R. Jones desires to secure a half-interest in the above-described instrument, the following agreement is therefore made between the parties hereto: 2d. In consideration of the covenants and agreements hereinafter stated, said R. M. Pattillo does hereby transfer and assign to the said T. R. Jones all his right to and under the above-described instrument. 3d. The said T. R. Jones binds himself that in the event R. M. Pattillo is unable to furnish one half the fund necessary to make the first payment of one thousand dollars toward purchasing the property described in the Jere Field obligation, that he, the said T. R. Jones, will raise and pay the said one thousand dollars before the option, or any extension of the option, shall expire. 4th. It is agreed between the parties that the balance of the purchase-money due on the property shall be borne equally by the said T. R. Jones and the said R. M. Pattillo; and if the said R. M. Pattillo, for any cause, should not be able to raise his half of the balance of the purchase-money, then that T. R. Jones shall have the right and privilege to pay the balance due by having the property mortgaged or bonded for an amount sufficient to raise the sum required. 5th. It is also agreed that the bond for title should be taken by T. R. Jones and that the title itself shall be made to T. R. Jones; but the said T. R. Jones binds himself to make good and sufficient title to the said R. M. Pattillo, or his assigns,

to the one undivided half-interest in the property aforedescribed, whenever the said R. M. Pattillo or his assigns shall pay, or cause to be paid, to the said T. R. Jones, one half of the entire purchase-money of said property, with interest at eight per cent. per annum upon said money from the date of its payment. 6th. It is also agreed that in the event the property hereinbefore referred to should be sold by T. R. Jones and R. M. Pattillo for a profit before the purchase-money falls due or is paid, that in that event all advancements made by said T. R. Jones shall be repaid out of the gross sum, together with the interest at eight per cent. due thereon, and that the balance, after completing the payments, shall be equally divided between the said T. R. Jones and the said R. M. Pattillo. Signed in duplicate this 18th day of August, 1894.　　　　　T. R. Jones.

　　　　　　　　　　　　　　　　　　　　　　　R. M. Pattillo.

"The following paper is made after the above, and shall operate as a substitute for the foregoing paper where any matter in this conflicts with matter in the other : It is agreed, if at the end of two years the one-half of the profits arising from the property more fully set forth in the 60 days option hereto attached and this day transferred to T. R. Jones by R. M. Pattillo, being the option signed by J. E. Field for 137 7/10 acres on the south side of the Etowah river, known as the widow Dobbs place, does not amount to enough to pay one half of the purchase-money and interest, then said Pattillo will lose all the interest and rights he has to said property and be relieved from any and all of the debts incurred for purchase-money and interest as stated in foregoing paper. But should they amount to enough to pay for the one-half of the purchase-price and interest, then he is to have a deed from T. R. Jones for the one-half interest in the entire property, and Jones is not bound to make such deed until he, said Jones, has received enough money from such profits to reimburse him, said Jones, for all moneys advanced by him. R. M. Pattillo will have the right to purchase the 82 acres on the west of road upon him paying T. R. Jones one thousand dollars in the event that he, the said Pattillo, should lose his half-interest above as stated, by reason of not having enough profits to pay for the half of the entire

place. It is understood of course that both the signers of this contract will make their best efforts toward the success of the partnership, either in the line of working or selling the property. The profits which arise from the working of the property are to remain in the hands of T. R. Jones and controlled absolutely by him until he is paid for money advanced by him. Purchase-price and interest interlined before signing. Signed in duplicate August 18th, 1894.               T. R. Jones.

"Witness F. M. Loveless.               R. M. Pattillo."

The first amendment to the petition is as follows: Plaintiff on and before August 18, 1896, tendered to the defendant $1,000, and demanded of defendant a deed to the 82 acres on the west side of the road referred to in said contract. Defendant rejected said money and announced his refusal to receive the same then or afterwards. Plaintiff has always since then been ready, willing, and able to pay said $1,000, and now offers to do so, and demands deed to said 82 acres. One half of the profits arising from the property in question in said contract did not at the end of two years from the date of said contract amount to one half of the purchase-money and interest which was promised Field for said place. This was without the fault of the plaintiff. Defendant has remained in possession and control of the property in question, and has received the yearly rents and profits therefrom. The rents and profits received from said 82 acres have amounted to $400 per annum or other large sum for each year since 1892. Defendant has failed and refused to pay Field the purchase-money of said property, and there is now due on said purchase-money $3,000 principal, besides interest. Defendant has never bought or paid for said property as he agreed, and has never obtained from Field any deed thereto as he undertook to do. The second amendment alleges, that plaintiff desired to secure the agricultural interest in the land in any event, but that defendant did not care for the agricultural lands, and had not been dealing in agricultural lands, nor running farms, but had been dealing in mineral properties, and desired to obtain the land in question because of the valuable mineral deposits thereon; that defendant did pay to Field $1,000 upon the purchase-

money of the place, took his bond for title, and agreed to pay him $3,000 more, besides interest, Field recognizing said option as binding and making the trade in accordance therewith; that defendant took exclusive possession, and holds it against plaintiff and in contravention of plaintiff's right, and has converted to his use the rents and profits, amounting to $350 per year, or other large sum. Defendant claims to have sold the 82 acres referred to in the contract, to wit the farm part of the property. Sale of the farm is a breach of the contract, and put it out of the power of plaintiff to comply with his contract to maintain the farm. The farm is worth $3,500, and defendant bound himself to sell it to plaintiff for $1,000; wherefore defendant has damaged plaintiff $2,500, for which plaintiff prays judgment.

*John W. Akin*, for plaintiff. *King & Spalding, J. W. Harris* and *A. S. Johnson*, for defendant.

LEWIS, J. It appears from the facts stated in the official report of this case, that the plaintiff's action was based upon a transfer to the defendant of an option obtained from one Field, by which the latter gave to plaintiff the privilege of buying certain lands upon payment of a certain amount within sixty days. The record fails to show any consideration whatever for this option; and it is urged with much force by counsel for defendant in error, that the original contract between plaintiff and defendant was a mere nudum pactum, there being an obligation on the part of Field to do something without any corresponding obligation on the part of the plaintiff to do anything. We are not prepared to say but that if Field afterwards recognized this obligation as binding upon him by selling the land to Jones, as transferee of the option, the contract made between plaintiff and defendant, though void and dead in its incipiency, was galvanized into life by the subsequent action of Field. Under the view we take of this case, however, we do not consider it necessary to decide this question raised in the argument.

The original suit was founded upon a partnership contract, and was brought by one of two partners against the other, for the purpose of restraining the defendant from disposing of the

partnership property, having a receiver appointed to take charge of it, and effecting a dissolution of the partnership. It does not appear that any injunction has ever been granted or a receiver appointed, as prayed for in the petition. It was provided in the contract, which was the basis of plaintiff's action, that if, at the end of two years, one half of the profits arising from the property should not amount to enough to pay one half of the purchase-money and interest, then the plaintiff should lose all of his interest and rights he has to the property, and be relieved from any and all of the debts incurred for purchase-money and interest. When the case came on for trial, the two years limitation had expired; and it appears from an amendment to plaintiff's petition, that the profits had not amounted to enough to give him the interest in the property contemplated by the partnership scheme. At the trial, then, there was nothing left in the original petition to be determined. The partnership had expired by the terms of the contract. There was no partnership property in existence; nothing left for an injunction to operate upon, and nothing to be placed in the hands of a receiver. Plaintiff, however, sought to maintain his standing in court by offering another amendment to his petition, seeking to enforce his rights under the following provision in the contract: "R. M. Pattillo will have the right to purchase the 82 acres on the west of road, upon him paying T. R. Jones one thousand dollars in the event that he, the said Pattillo, should lose his half-interest above as stated, by reason of not having enough profits to pay for the half of the entire place." He alleged in his amendment that the defendant had claimed to have sold this 82 acres, and he prayed for damages growing out of a breach of this portion of the contract. It was about eighteen months after the filing of the original petition before this alleged breach occurred. Therefore, no such cause of action existed when the suit was originally brought. The action, as originally instituted, was purely and wholly equitable in its nature. The amendment sets up a cause of action purely legal, and for a breach of contract originating long after the suit was filed. While the law of Georgia is very liberal in allowing amendments to pleadings, yet a fundamental

rule governing this practice is, that there must be something left in the original structure erected by the pleader which he can repair by an amendment. If we are right in our view that at the trial term of the case there was nothing left in the petition upon which any relief prayed for could be granted, there was nothing left to amend by, and the plaintiff's amendment set up a new and distinct cause of action. *Williams* v. *Hall*, 103 *Ga.* 796.

　　　　　*Judgment affirmed. All the Justices concurring.*